# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTOPHER KIRCHNER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>M. BITER, et al.,<br><br>　　　　Defendants. | Case No. 1:18-cv-00516-AWI-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>(ECF No. 19) |

Plaintiff Kristopher Kirchner ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. On April 26, 2019, the Court screened Plaintiff's complaint and granted him leave to file an amended complaint or to notify the Court of his willingness to proceed on certain cognizable claims. (ECF No. 16.) Plaintiff's first amended complaint, filed on June 20, 2019, is currently before the Court for screening. (ECF No. 19.)

**I.　Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief

from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

**II. Plaintiff's Amended Complaint**

Plaintiff is currently housed at California State Prison, Los Angeles County. The events in the complaint are alleged to have occurred primarily at Kern Valley State Prison ("KVSP") in Delano, California. Plaintiff names the following defendants: (1) KVSP Warden M. Biter; (2) KVSP Assistant Warden C. Pfeiffer, (3) KVSP Captain S. Henderson: (4) KVSP Lieutenant J. Harden; (5) KVSP Senior Hearing Officer J. S. Diaz; (6) KVSP Investigative Employee J. Perez; (7) KVSP Appeals Coordinator S. Tallerico; (8) Appeals Examiner R. Pimental; (9) Internal Affairs Agent S. Cooper; and (10) KVSP Appeals Coordinator D. Tarnoff.

<u>Factual Allegations</u>

Plaintiff alleges the conspiracy began on January 10, 2014 and with Defendant Harden, authoring of Plaintiff's April 22, 2014 RVR regarding conspiracy to batter an inmate with a weapon. Plaintiff contends that all evidence disproves this claim.

On February 6, 2014, Plaintiff arrived on Facility A, one month after the beginning of the alleged conspiracy. All whites and STG Crips were locked down. All non-Crip black inmates had

full program.

On or about March 5, 2014, white inmates and Crips were locked down due to an incident on February 12, 2014, when two white inmates were severely beaten by black inmates-STG Crips. All non-Crip black inmates had full program.

On or about March 17, 2014, incremental unlock for both white inmates and STG Crips proceeded without incident.

On March 18, 2014, white inmates and STG Crips returned to full program.

On March 26, 2014, Plaintiff went to yard once due to staff shortages and yard rotation schedule.

On March 27, 2014, Plaintiff was released from his cell for Odinist services, searched for weapons by floor staff (none were found) and sent to A-Lower yard to be processed onto the patio. For ten minutes, Plaintiff mingled with white, Mexican, and black inmates. At that time, Odinist Services were cancelled, and all white inmates were corralled by correctional officers and escorted back to their housing blocks. Upon his return, Plaintiff again was subjected to a clothed body search with negative results for contraband. A few minutes later, Plaintiff and his cellmate were secured in the B-section shower and subjected to an unclothed body search with negative results. Plaintiff's cell also was searched. No contraband was found. All white inmates were again locked down, but no reason was given.

From March 27 to April 9, 2014, Defendant J. Harden interviewed a confidential source for an April 10 confidential memorandum. The information neither named the Plaintiff as a conspirator nor described Plaintiff's specific role in the conspiracy to batter an inmate with a weapon-STG Nexus for which Plaintiff was charged. Plaintiff alleges that Defendant J. Harden recorded on an official document that the confidential memorandum indeed named the Plaintiff as a conspirator and described his specific role in the alleged conspiracy, just days after Plaintiff filed an informal grievance for racial discrimination, suggests a retaliatory motive.

On April 10, 2014, as a result of the confidential interview, Plaintiff's cell was raided at 0400 hours by the Institutional Gang Investigations Unit. Plaintiff's cell was searched manually, with metal detectors and with dogs, but no contraband was found. Upon conclusion of the cell

3

search, Plaintiff's property was confiscated by the unit in order to be investigated for gang activity. The investigation found no gang activity and the property was returned 11 days later.

On April 14, 2014, Plaintiff filed an informal grievance (CDCR 22 Form) requesting that the white inmate population be treated equally to the black inmate population on Facility A with white inmates being locked down according to their STG designation instead of as a race.

On April 15, 2014, Plaintiff's cell again was searched for weapons and contraband with negative results.

On April 17, 2014, Defendant J. Harden interviewed the confidential source quoted in a confidential memorandum dated April 22, 2014. The information was used a corroborating evidence that Plaintiff conspired to batter an inmate with a weapon—STG Nexus. Plaintiff asserts that this information lacks any mention of Plaintiff and is not located in his c-file.

On April 22, 2014, Plaintiff was placed in Ad/Seg for RVR FA-14-04-024 (conspiracy to batter an inmate with a weapon-STG Nexus). Plaintiff contends that the conspiracy charge, later overturned by Judge Follett of California State Superior Court/Del Norte County due to no supporting evidence, was in retaliation for filing an informal grievance. The chronology of events implies retaliation and is further supported by Defendant J. Harden's refusal to answer Plaintiff's independent investigator's questions as well as lying by saying that Plaintiff was named as part of the conspiracy when, in fact, Plaintiff was not. Plaintiff contends that he neither conspired to batter an inmate with a weapon nor was he involved in any of the incidents related to the racial unrest on Facility A at that time. Plaintiff further contends that it served no penological interest to place Plaintiff in Ad/Seg for a fabricated charge.

On May 15, 2014, Plaintiff gave Defendant J. Perez, the investigative employee, questions for witnesses and a request for non-confidential documents.

On May 30, 2014, Plaintiff received an incomplete investigative employee report. Defendant J. Harden refused to answer 75% of Plaintiff's questions and lied by stating that Plaintiff was named as part of the conspiracy. Defendant Henderson refused to answer any of Plaintiff's questions regarding racial discrimination on A- Facility. Plaintiff complains that both of these defendants impeded an official investigation and hindered Plaintiff from gathering evidence in his

4

defense.

On the same day, May 30, 2014, Plaintiff filed a 602 (Inmate Appeal), asking that his staff complaint against Defendant Henderson for racial discrimination be processed. Plaintiff contends that this 602 disappeared.

On June 1, 2014, Plaintiff requested via 22 Form that the Chief Disciplinary Officer assign him an investigative employee who would collect evidence for his defense. The request was never answered.

On June 3, 2014, Plaintiff attended his disciplinary hearing. Plaintiff noted that all twelve of his alleged co-conspirators already had been found guilty by Defendant Rios. At the hearing, Plaintiff submitted his written statement in order to have it recorded in the hearing's report. Plaintiff asked Defendant Diaz to sign his copy of the written statement, but Defendant Diaz refused. Defendant Diaz glanced at the statement, briefly reviewed the RVR and asked Plaintiff if he had anything to add before Defendant Diaz made his decision. Plaintiff argued his case for twenty minutes. Defendant Diaz allegedly countered Plaintiff's evidence by distorting the RVR and inventing scenarios to justify a guilty finding. Plaintiff requested Defendant Harden as a witness, but Defendant Diaz denied the request and found Plaintiff guilty of conspiracy to batter an inmate with a weapon – STG nexus.

On June 13, 2014, Plaintiff filed a staff complaint against Defendants Harden and Henderson for refusing to answer Plaintiff's investigative employee questions. The 602 reportedly disappeared, along with two others—one for racial discrimination and one for denial of the appeals process.

On June 20, 2014, Plaintiff received Defendant Diaz's Senior Hearing Officer's report. Plaintiff claims it was largely falsified.

On June 23, 2014, Plaintiff appealed the RVR guilty finding, but the appeal disappeared.

On July 10, 2014, Plaintiff filed a staff complaint against Defendant Diaz for suppressing Plaintiff's defense and for denying a witness. This appeal also disappeared.

On July 17, 2014, Plaintiff was notified by the Appeals Office that it had no record of Plaintiff's July 1 appeal of his guilty finding. All supporting documents also disappeared.

On July 18, 2014, Plaintiff requested that his counselor provide him all the supporting documents to re-appeal the guilty finding.

On July 21, 2014, due to the disappearance of his appeals, Plaintiff attempted to circumvent those responsible by appealing his guilty finding to the third level of review in Sacramento. This appeal was screened out for being filed at the wrong level.

On July 23, 2014, to avoid having his appeal dismissed for time constraint violations, Plaintiff filed a duplicate appeal of the guilty finding, asking Sergeant Valenzuela for the necessary documents and to walk Plaintiff's appeal to the Appeals Office for processing. This appeal was screened out by Defendant Tallerico.

On August 7, 2014, Plaintiff was taken to committee and given a 24-month SHU term followed by an indeterminate term in the Step Down Program. CSR deferred the transfer until the mistaken point assessment for conspiracy was fixed.

On August 18, 2014, due to the disappearance of his 602s, Plaintiff asked Officer Vieth to make him copies of his recently screened out 602. Plaintiff already had mailed copies home for safe keeping. Officer Vieth lost one of Plaintiff's copies.

On August 20, 2014, Plaintiff again attempted to bypass the KVSP Appeals Office, sending his appeal to the Chief of Inmate Appeals Branch. This 602 also was screened out for submission at the incorrect level.

On September 7, 2014, Plaintiff acquired documents indicating that his alleged co-conspirator, Inmate Siders, had his SHU deferred because one of the confidential memoranda neither mentioned him nor was located in his file. Plaintiff claims that this same lack of evidence also applied to him. He requested the same SHU deferment but was denied. Plaintiff attempted to include this in his 602, but was told by Defendant Tallerico to remove it and other documents before his appeal would be screened. Plaintiff claims that the arbitrary "screen outs" of his appeal and the disappearance of multiple appeals violated his First and Fourteenth Amendment rights.

On September 8, 2014, Aleshia Quennell (now Kirchner), on Plaintiff's behalf, contacted the Office of Internal Affairs and informed them of the ongoing First and Fourteenth Amendment violations. Defendant S. Cooper refused to investigate the allegations of staff misconduct and

6

instead entrusted the investigation to Defendant Biter, who entrusted it to the Appeals Office. Defendant Tarnoff swept most of the complaints under the rug.

On September 12, 2014, Plaintiff re-appealed the RVR for conspiracy and had Sergeant Valenzuela walk it to the Appeals Office.

On September 15, 2014, Plaintiff was moved from ASU-1 to ASU-2.

On September 29, 2014, Plaintiff still had not received a response to his 602. Plaintiff requested verification of the 602. He did not receive a response for five months and his appeal was never delivered.

On October 8, 2014, Plaintiff contacted Lieutenant Ostrander and asked her to contact Sergeant Valenzuela about the 602 for conspiracy. Plaintiff was told that Sergeant Valenzuela had to leave early on September 12, 2014, and had entrusted it to a junior officer. The junior officer lost it.

On October 10, 2014, Sergeant Valenzuela provided Plaintiff with the documents necessary to re-file his conspiracy appeal.

On October 15, 2014, Sergeant Valenzuela walked Plaintiff's conspiracy 602 to the Appeals Office.

On October 16, 2014, Defendant Tallerico screened out Plaintiff's appeal. Plaintiff claims that this denied him access to the courts.

On October 19, 2014, Plaintiff contacted Internal Affairs and informed them of his civil rights violations. Defendant Cooper sent the complaint to Defendant Biter, who sent it to Defendant Tarnoff. Defendant Tarnoff did not investigate any of Plaintiff's complaints.

On October 21, 2014, Plaintiff asked Lieutenant Ostrander to help him get his conspiracy appeal processed. She reportedly talked to Defendant Tallerico.

On October 30, 2014, Plaintiff's appeal was finally accepted.

On November 11, 2014, Defendant Pfeiffer denied Plaintiff's appeal at the second level. Plaintiff claims that Defendant Pfeiffer violated his First and Fourteenth Amendment rights by upholding the baseless guilty finding.

On December 4, 2014, Plaintiff filed a staff complaint against Defendants Henderson,

Harden and Diaz. Defendant Tallerico screened out the 602 for time constraint violations and all supporting documents disappeared.

On December 12, 2014, Plaintiff asked Officer Garcia to defer his SHU as he did for Inmate Siders. Plaintiff was ignored.

On December 30, 2014, Plaintiff contacted Internal Affairs and provided them an eight-page record of his civil rights violations. Defendant Cooper refused to investigate the allegations, which were sent to Defendant Biter and then to Defendant Tarnoff for investigation.

On March 3, 2015, Defendant Tarnoff ignored Plaintiff's complaints and denied his appeal at the second level of review.

On the same day, Plaintiff was taken to committee and again denied the SHU deferment. Instead, Plaintiff was punished with a 24-month SHU term to be followed by an indeterminate placement into the Step Down Program. Plaintiff also was put up for transfer to CCI or Corcoran SHU.

On March 21, 2015, Plaintiff was emergency transferred to Pelican Bay, given only 15 minutes to pack. This occurred the day before Plaintiff was to receive a scheduled visit from out-of-town. Plaintiff claims this was retaliation for contacting Internal Affairs.

On May 4, 2015, Plaintiff was placed in the SHU and much of his property was thrown out because of property restrictions.

In early June 2015, Plaintiff received the third level denial for his conspiracy appeal.

On July 16, 2015, Plaintiff filed a writ of habeas corpus, Case No. HCPB-15-5095, with the California Superior Court of Del Norte County. Plaintiff challenged the guilty finding for conspiracy, as well as the alleged civil rights violations. At the same time, Defendant Wong refused to investigate Eileen Peterson's citizen's complaint and instead entrusts the investigation to Defendant Biter, who did not investigate Ms. Peterson's concerns about her son's emergency transfer.

In late December 2015, Plaintiff was transferred to San Diego County Jail for a *Miller v. Alabama* hearing.

On March 21, 2015, Plaintiff returned to Pelican Bay SHU.

On April 6, 2015, Plaintiff went to committee for his annual review. Initially, Plaintiff's counselor recommended that Plaintiff, having completed his 24-month SHU term, be placed into Step 1 of the Step Down Program. Plaintiff disagreed and informed the committee about the lack of evidence for his SHU placement and the pending writ. Plaintiff subsequently was released to the mainline.

On April 28, 2015, Plaintiff was transferred back to KVSP, where Defendant Pfeiffer was then Warden. Plaintiff told staff that he wanted to go to SNY. It took Plaintiff nineteen months to complete the debrief process.

On June 17, 2016, Plaintiff's writ was granted and his guilty finding for conspiracy was vacated, along with all other resulting penalties.[1]

Causes of Action

Plaintiff asserts ten separate causes of action. In cause one, Plaintiff contends that Defendant Biter violated Plaintiff's First and Fourteenth Amendment rights by allowing Plaintiff's civil rights to be violated and for improper supervision regarding Plaintiff's appeals.

In the second cause, Plaintiff alleges that Defendant Pfeiffer violated Plaintiff's Fourteenth Amendment rights.

In the third cause, Plaintiff alleges that Defendant Henderson violated Plaintiff's Fourteenth Amendment rights by refusing to answer Plaintiff's investigative employee questions and hindering his defense.

In the fourth cause, Plaintiff alleges that Defendant Harden violated Plaintiff's First and Fourteenth Amendment rights by retaliating against Plaintiff for his racial discrimination complaint, fabricating evidence for the conspiracy RVR, refusing to answer most of Plaintiff's investigative employee questions and hindering his defense.

In the fifth cause, Plaintiff alleges that Defendant Diaz violated Plaintiff's Fourteenth

---

[1] The Court takes judicial notice of Plaintiff's habeas action in the Del Norte County Superior Court, *In re: Kristopher Kirchner, J-31375* and the Decision Granting Petition for Writ of Habeas Corpus dated June 17, 2016 (Doc. 1 at pp. 5-8.) The court may take judicial notice of state court records. See Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007); Kasey v. Molybdenum Corp. of America, 336 F.2d 560, 563 (9th Cir. 1964).

Amendment rights by denying him Due Process: ignoring and suppressing Plaintiff's written defense, failing to record it in his findings and make it available to reviewing officers, and denying his request for witnesses and an impartial hearing officer.

In the sixth cause, Plaintiff alleges that Defendant Perez violated Plaintiff's Fourteenth Amendment Due Process rights by failing to collect evidence on Plaintiff's behalf.

In the seventh cause, Plaintiff alleges that Defendant Tallerico violated his First and Fourteenth Amendment rights. Plaintiff claims that Defendant Tallerico denied or obstructed his access to courts through exhaustion of administrative remedies. Plaintiff also alleges that Defendant Tallerico violated his Fourteenth Amendment rights by ignoring evidence of the due process violations.

In the eighth cause, Plaintiff alleges that Defendant Pimental violated Plaintiff's Fourteenth Amendment rights by denying Plaintiff's appeal at the third level.

In the ninth cause of action, Plaintiff alleges that Defendant Cooper violated Plaintiff's First and Fourteenth Amendment rights because he refused to supervise and correct the behavior of those under his authority violating Plaintiff's civil rights.

In the tenth cause, Plaintiff alleges that Defendant Tarnoff violated Plaintiff's rights by refusing to investigate Plaintiff's allegations of civil rights violations and obstructing his appeals.

Requested Relief

As relief, Plaintiff seeks monetary damages.

**III.     Discussion**

**A.     Supervisory Liability**

Insofar as Plaintiff is attempting to sue Defendants Biter, Cooper and Pfeiffer (or any other supervisors) based on their supervisory roles, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1020–21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir.2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or

knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. Cty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

Plaintiff's allegations concerning Defendants Biter and Pfeiffer are not sufficient to state a cognizable claim. At best, Plaintiff is attempting to impose liability against these defendants based simply on their supervisory roles. There are no allegations to suggest that that these defendants participated in any violations of Plaintiff's rights or that they implemented any deficient policies that were the moving force of any constitutional violation. Plaintiff has been unable to cure this deficiency.

      **B.**      **First Amendment**

            **1.**      **Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Adverse action taken against a prisoner "need not be an independent constitutional violation. The mere threat of harm can be an adverse action." Watison, 668 F.3d at 1114 (internal

citations omitted). A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred. Id. The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities. Rhodes, 408 F.3d at 567–68. Plaintiff must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." Watison, 668 F.3d at 1114. A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." Id.

### Defendant Harden

Plaintiff alleges that Defendant Harden retaliated against him for his racial discrimination complaint. However, Plaintiff's allegations are not sufficient to state a cognizable retaliation claim against Defendant Harden. The amended complaint lacks any factual allegations suggesting that Defendant Harden took any adverse action against Plaintiff *because of* any protected activity of which Defendant Harden was aware. Although Plaintiff alleges that the timing alone should be sufficient, there is nothing in the complaint to suggest that Defendant Harden had any knowledge of Plaintiff's protected activity. Plaintiff has been unable to cure this deficiency.

### Defendant Tallerico

Insofar as Plaintiff alleges that Defendant Tallerico retaliated against him for filing grievances screening out Plaintiff's appeals and otherwise obstructing Plaintiff's access to court, Plaintiff's complaint fails to state a cognizable claim for retaliation. There is no indication that Defendant Tallerico took any adverse action against Plaintiff because of any protected conduct. As discussed below, actions in screening out appeals are not sufficient to support a constitutional violation. Plaintiff has been unable to cure this deficiency.

### 2. **Access to Courts**

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). However, the right is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. In order to state a claim for the denial of court access, a prisoner

must establish that he suffered an actual injury. Id. at 349. "[A]ctual injury [is] actual prejudice with respect to contemplated or existing litigation, such as the ability to meet a filing deadline or to present a claim." Id. at 348; Christopher v. Harbury, 536 U.S. 403, 415 (2002) (quoting Lewis, 518 U.S. at 353 & n.3); Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011).

In this case, Plaintiff alleges that Defendant Tallerico denied him access to the courts by screening out or failing to act on his appeals. However, Plaintiff's complaint does not include any factual allegations demonstrating that Defendant Tallerico or any other named defendant prevented Plaintiff from filing a criminal appeal, habeas petition or civil rights action or that he suffered any actual injury with respect to contemplated or existing litigation relative to the processing of his grievances. Moreover, Plaintiff successfully filed a writ of habeas corpus, which was granted, undermining any claim that he was denied access to courts and suffered any injury. Plaintiff has been unable to cure this deficiency.

### C. Fourteenth Amendment

#### 1. Equal Protection – Deferral of SHU Term

Plaintiff also claims that Defendant Pfeiffer violated his Equal Protection rights by treating him differently than Inmate Siders relative to his SHU term.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established by demonstrating that the defendant intentionally discriminated against the plaintiff on the basis of the plaintiff's membership in a protected class, such as race. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001); Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

Where no suspect class or fundamental right is implicated, a plaintiff's equal protection claims are subject to a rational basis review. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); United States v. Juvenile Male, 670 F.3d 999, 1009 (9th Cir. 2012); Nelson v. City of Irvine, 143 F.3d 1196, 1205 (9th Cir. 1998) ("Unless a classification trammels fundamental personal rights or implicates a suspect classification, to meet constitutional challenge the law in question needs only some rational relation to a legitimate state interest."). In the prison context, the

right to equal protection is viewed through a standard of reasonableness; that is, whether the actions of prison officials are "reasonably related to legitimate penological interests." Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

Here, Plaintiff's complaint does not include allegations that Defendant Pfeiffer intentionally discriminated against him on the basis of a suspect class in refusing deferral of the SHU term or that he was similarly situated to Inmate Siders. Further, Plaintiff's complaint does not include allegations suggesting that the actions of prison officials, in refusing to defer his SHU term, were not reasonably related to legitimate penological interests.

Plaintiff also generally alleges that certain defendants denied him "equal protection," such as Defendants Biter, Tallerico and Cooper. However, conclusory allegations, without more, are not sufficient to state a cognizable equal protection claim. Plaintiff has been unable to cure these deficiencies.

### 2. Due Process Clause - Disciplinary Proceedings

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).

As to disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418 U.S. 539, 563–70 (1974). Due process is satisfied where these minimum requirements have been met, and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer. See Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached."

Hill, 472 U.S. at 455–56.

Here, the Court finds that Plaintiff's complaint states a cognizable due process claim arising out of his disciplinary proceedings against Defendants Henderson, Harden, Diaz and Perez. Plaintiff's complaint includes allegations suggesting that these defendants either prevented him from receiving assistance or prevented him from providing evidence or witnesses at the hearing. Plaintiff also adequately alleges that the decision of the hearing officer was not supported by "some evidence" and was subsequently reversed by the state court.[2]

### 3. Due Process - Confiscation of Property

Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property is actionable under the Due Process Clause; See Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435–36 (1982) ); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), however, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available," Hudson, 468 U.S. at 533.

Plaintiff appears to complain about the wrongful, unauthorized taking and/or destruction of his property by Defendants Criteser and Statham. Due Process is therefore satisfied if there is a meaningful post-deprivation remedy available to him. Hudson, 468 U.S. at 533. Plaintiff has an adequate post-deprivation remedy available under California law. Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895). Accordingly, Plaintiff's complaint fails to state a cognizable claim for the alleged deprivation of his personal property.

### D. Grievance/Complaint Process

Plaintiff alleges that Defendants Tallerico, Pimental, Cooper, Tarnoff, Wong, and Perez

---

[2] By this order, the Court makes no determination as to the applicability of claim preclusion or other equitable doctrines barring this claim. The Court notes that a petition for writ of habeas corpus filed in California state court can have a claim preclusive effect on a subsequent section 1983 action if the second suit involves: (1) the same cause of action (2) between the same parties or parties in privity with them (3) after a final judgment on the merits in the first suit. Furnace v. Giurbino, 838 F.3d 1019, 1023 (9th Cir. 2016).

15

denied him due process by destroying or failing to properly process or review his grievances and complaints. However, Plaintiff cannot pursue any claims against prison staff based solely on the processing and review of his inmate appeals. Plaintiff does not have a constitutionally protected right to have his appeals accepted or processed. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.19 88). The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993); see also Wright v. Shannon, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment). Denial or refusal to process a prison grievance is not a constitutional violation. Rushdan v. Gear, No. 1:16-cv-01017-BAM (PC), 2018 WL 2229259, at *6 (E.D. Cal. May 16, 2018). Accordingly, Plaintiff fails to state a cognizable claim arising out of the screening, investigation or processing of his grievances or complaints.

**IV. Conclusion and Recommendation**

Based on the above, the Court finds that Plaintiff's complaint states a cognizable Fourteenth Amendment due process claim against Defendants Henderson, Harden, Diaz and Perez arising from Plaintiff's disciplinary proceedings, but fails to state any other cognizable claim for relief.[3] Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the remaining deficiencies and further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. This action proceed on Plaintiff's first amended complaint, filed on June 20, 2019, against Defendants Henderson, Harden, Diaz and Perez arising from Plaintiff's disciplinary proceedings;

2. All other claims and defendants be dismissed from this action based on Plaintiff's failure to state claims upon which relief may be granted.

---

[3] As noted above, at this stage of the proceedings, the Court has not made a determination as to the applicability of claim preclusion or other equitable doctrines that may bar this claim.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 27, 2020**　　　　　/s/ *Barbara A. McAuliffe*
　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE