1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KRISTOPHER KIRCHNER,                        Case No.  1:18-cv-00516-JLT-BAM (PC)

12                    Plaintiff,                  **ORDER GRANTING REQUEST FOR
                                                  JUDICIAL NOTICE**
13         v.
                                                  (ECF No. 43)
14   BITER, *et al.*,
                                                  **FINDINGS AND RECOMMENDATIONS
15                    Defendants.                 REGARDING MOTION TO DISMISS
                                                  PLAINTIFF'S FIRST AMENDED
16                                                COMPLAINT**

17                                                (ECF No. 42)

18                                                FOURTEEN (14) DAY DEADLINE

19

20                        __FINDINGS AND RECOMMENDATIONS__

21      **I.      Introduction**

22         Plaintiff Kristopher Kirchner is a former state prisoner proceeding *pro se* and *in forma*

23   *pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on

24   Plaintiff's first amended complaint, filed June 20, 2019 (ECF No. 19), for Fourteenth Amendment

25   due process claims against Defendants Henderson, Harden, Diaz, and Perez arising from

26   Plaintiff's disciplinary proceedings.  (ECF No. 22.)

27         On March 16, 2021, Defendants Henderson, Harden, and Diaz filed (1) a motion to

28   dismiss on the ground that this action is barred by the doctrine of *res judicata* and (2) a request

                                            1

for judicial notice.  (ECF Nos. 42, 43.)  On April 8, 2021, the Court directed Plaintiff to file an opposition to Defendants' motion to dismiss.  (ECF No. 46.)  In compliance with the Court's order, Plaintiff filed an opposition to the motion to dismiss on April 30, 2021.  (ECF No. 47.)  Defendants Henderson, Harden, and Diaz filed their reply on May 7, 2021.  (ECF No. 48.)  On July 15, 2021, following waiver of service, Defendant Perez filed a notice of joinder in the pending motion to dismiss.  (ECF No. 50.)

Defendants' motion to dismiss and request for judicial notice are deemed submitted.[1] Local Rule 230(l).

## II.      Factual Allegations in First Amended Complaint

Plaintiff is no longer incarcerated.  (ECF No. 52.)  The events in the complaint are alleged to have occurred primarily while Plaintiff was housed at Kern Valley State Prison ("KVSP") in Delano, California.

Plaintiff alleges the conspiracy began on January 10, 2014, according to Defendant Harden, who authored Plaintiff's April 22, 2014 RVR-FA-14-04-024 for conspiracy to batter an inmate with a weapon. Plaintiff contends that all evidence disproves this claim.

On February 6, 2014, Plaintiff arrived on Facility A, one month after the beginning of the alleged conspiracy. All whites and STG Crips were locked down. All non-Crip black inmates had full program.

On or about March 5, 2014, white inmates and Crips were locked down due to an incident on February 12, 2014, when two white inmates were severely beaten by black inmates-STG Crips. All non-Crip black inmates had full program.

On or about March 17, 2014, incremental unlock for both white inmates and STG Crips proceeded without incident.

On March 18, 2014, white inmates and STG Crips returned to full program.

On March 26, 2014, Plaintiff went to yard once due to staff shortages and yard rotation schedule.

---

[1] This motion was dropped inadvertently by the Court's CM/ECF reporting/calendaring system resulting in the prolonged delay in resolution.

1     On March 27, 2014, Plaintiff was released from his cell for Odinist services, searched for
2   weapons by floor staff (none were found) and sent to A-Lower yard to be processed onto the
3   patio. For ten minutes, Plaintiff mingled with white, Mexican, and black inmates. At that time,
4   Odinist Services were cancelled, and all white inmates were corralled by correctional officers and
5   escorted back to their housing blocks. Upon his return, Plaintiff again was subjected to a clothed
6   body search with negative results for contraband. A few minutes later, Plaintiff and his cellmate
7   were secured in the B-section shower and subjected to an unclothed body search with negative
8   results. Plaintiff's cell also was searched. No contraband was found. All white inmates were again
9   locked down, but no reason was given.

10     From March 27 to April 9, 2014, Defendant Harden interviewed a confidential source for
11  an April 10 confidential memorandum. The information neither named the Plaintiff as a
12  conspirator nor described Plaintiff's specific role in the conspiracy to batter an inmate with a
13  weapon-STG Nexus for which Plaintiff was charged. Plaintiff alleges that Defendant Harden
14  recorded on an official document that the confidential memorandum indeed named the Plaintiff as
15  a conspirator and described his specific role in the alleged conspiracy, just days after Plaintiff
16  filed an informal grievance for racial discrimination, suggests a retaliatory motive.

17     On April 10, 2014, as a result of the confidential interview, Plaintiff's cell was raided at
18  0400 hours by the Institutional Gang Investigations Unit. Plaintiff's cell was searched manually,
19  with metal detectors and with dogs, but no contraband was found. Upon conclusion of the cell
20  search, Plaintiff's property was confiscated by the unit in order to be investigated for gang
21  activity. The investigation found no gang activity and the property was returned 11 days later.

22     On April 14, 2014, Plaintiff filed an informal grievance (CDCR 22 Form) requesting that
23  the white inmate population be treated equally to the black inmate population on Facility A with
24  white inmates being locked down according to their STG designation instead of as a race.

25     On April 15, 2014, Plaintiff's cell again was searched for weapons and contraband with
26  negative results.

27     On April 17, 2014, Defendant Harden interviewed the confidential source quoted in a
28  confidential memorandum dated April 22, 2014. The information was used as corroborating

1  evidence that Plaintiff conspired to batter an inmate with a weapon—STG Nexus. Plaintiff asserts

2  that this information lacks any mention of Plaintiff and is not located in his c-file.

3       On April 22, 2014, Plaintiff was placed in Ad/Seg for RVR FA-14-04-024 (conspiracy to

4  batter an inmate with a weapon-STG Nexus). Plaintiff contends that the conspiracy charge, later

5  overturned by Judge Follett of California State Superior Court/Del Norte County due to no

6  supporting evidence, was in retaliation for filing an informal grievance. The chronology of events

7  implies retaliation and is further supported by Defendant J. Harden's refusal to answer Plaintiff's

8  independent investigator's questions as well as lying by saying that Plaintiff was named as part of

9  the conspiracy when, in fact, Plaintiff was not. Plaintiff contends that he neither conspired to

10  batter an inmate with a weapon nor was he involved in any of the incidents related to the racial

11  unrest on Facility A at that time. Plaintiff further contends that it served no penological interest to

12  place Plaintiff in Ad/Seg for a fabricated charge.

13       On May 15, 2014, Plaintiff gave Defendant Perez, the investigative employee, questions

14  for witnesses and a request for non-confidential documents.

15       On May 30, 2014, Plaintiff received an incomplete investigative employee report.

16  Defendant Harden refused to answer 75% of Plaintiff's questions and lied by stating that Plaintiff

17  was named as part of the conspiracy. Defendant Henderson refused to answer any of Plaintiff's

18  questions. Plaintiff complains that both of these defendants impeded an official investigation and

19  hindered Plaintiff from gathering evidence in his defense.

20       On the same day, May 30, 2014, Plaintiff filed a 602 (Inmate Appeal), asking that his staff

21  complaint against Defendant Henderson for racial discrimination be processed. Plaintiff contends

22  that this 602 disappeared.

23       On June 1, 2014, Plaintiff requested via 22 Form that the Chief Disciplinary Officer

24  assign him an investigative employee who would collect evidence for his defense. The request

25  was never answered.

26       On June 3, 2014, Plaintiff attended his disciplinary hearing. Plaintiff noted that all twelve

27  of his alleged co-conspirators already had been found guilty by Defendant Diaz. At the hearing,

28  Plaintiff submitted his written statement in order to have it recorded in the hearing's report.

Plaintiff asked Defendant Diaz to sign his copy of the written statement, but Defendant Diaz refused. Defendant Diaz glanced at the statement, briefly reviewed the RVR and asked Plaintiff if he had anything to add before Defendant Diaz made his decision. Plaintiff argued his case for twenty minutes. Defendant Diaz allegedly countered Plaintiff's evidence by distorting the RVR and inventing scenarios to justify a guilty finding. Plaintiff requested Defendant Harden as a witness, but Defendant Diaz denied the request and found Plaintiff guilty of conspiracy to batter an inmate with a weapon – STG nexus. Plaintiff contends there was no evidence to support such a finding and that the fining did not even mee the bar under the "some evidence" standard.

On June 13, 2014, Plaintiff filed a staff complaint against Defendants Harden and Henderson for refusing to answer Plaintiff's investigative employee questions. The 602 reportedly disappeared, along with two others—one for racial discrimination and one for denial of the appeals process.

On June 20, 2014, Plaintiff received Defendant Diaz's Senior Hearing Officer's report. Plaintiff claims it was largely falsified. On June 23, 2014, Plaintiff appealed the RVR guilty finding, but the appeal disappeared.

On July 10, 2014, Plaintiff filed a staff complaint against Defendant Diaz for suppressing Plaintiff's defense and for denying a witness. This appeal also disappeared.

On July 17, 2014, Plaintiff was notified by the Appeals Office that it had no record of Plaintiff's July 1 appeal of his guilty finding. All supporting documents also disappeared.

On July 18, 2014, Plaintiff requested that his counselor provide him all the supporting documents to re-appeal the guilty finding.

On July 21, 2014, due to the disappearance of his appeals, Plaintiff attempted to circumvent those responsible by appealing his guilty finding to the third level of review in Sacramento. This appeal was screened out for being filed at the wrong level.

On July 23, 2014, to avoid having his appeal dismissed for time constraint violations, Plaintiff filed a duplicate appeal of the guilty finding, asking Sergeant Valenzuela for the necessary documents and to walk Plaintiff's appeal to the Appeals Office for processing. This appeal was screened out.

On August 7, 2014, Plaintiff was taken to committee and given a 24-month SHU term followed by an indeterminate term in the Step Down Program. CSR deferred the transfer until the mistaken point assessment for conspiracy was fixed.

On August 18, 2014, due to the disappearance of his 602s, Plaintiff asked Officer Vieth to make him copies of his recently screened out 602. Plaintiff already had mailed copies home for safe keeping. Officer Vieth lost one of Plaintiff's copies.

On August 20, 2014, Plaintiff again attempted to bypass the KVSP Appeals Office, sending his appeal to the Chief of Inmate Appeals Branch. This 602 also was screened out for submission at the incorrect level.

On September 7, 2014, Plaintiff acquired documents indicating that his alleged coconspirator, Inmate Siders, had his SHU deferred because one of the confidential memoranda neither mentioned him nor was located in his file. Plaintiff claims that this same lack of evidence also applied to him. He requested the same SHU deferment but was denied. Plaintiff attempted to include this in his 602, but was told by Appeals Coordinator Tallerico to remove it and other documents before his appeal would be processed. Plaintiff claims that the arbitrary "screen outs" of his appeal and the disappearance of multiple appeals violated his First and Fourteenth Amendment rights.

On September 8, 2014, Aleshia Quennell (now Kirchner), on Plaintiff's behalf, contacted the Office of Internal Affairs and informed them of the ongoing First and Fourteenth Amendment violations. Agent S. Cooper refused to investigate the allegations of staff misconduct and instead entrusted the investigation to Warden Biter, who entrusted it to the Appeals Office. Appeals Coordinator Tarnoff swept most of the complaints under the rug.

On September 12, 2014, Plaintiff re-appealed the RVR for conspiracy and had Sergeant Valenzuela walk it to the Appeals Office.

On September 15, 2014, Plaintiff was moved from ASU-1 to ASU-2.

On September 29, 2014, Plaintiff still had not received a response to his 602. Plaintiff requested verification of the 602. He did not receive a response for five months and his appeal was never delivered.

On October 8, 2014, Plaintiff contacted Lieutenant Ostrander and asked her to contact Sergeant Valenzuela about the 602 for conspiracy. Plaintiff was told that Sergeant Valenzuela had to leave early on September 12, 2014, and had entrusted it to a junior officer. The junior officer lost it.

On October 10, 2014, Sergeant Valenzuela provided Plaintiff with the documents necessary to re-file his conspiracy appeal.

On October 15, 2014, Sergeant Valenzuela walked Plaintiff's conspiracy 602 to the Appeals Office.

On October 16, 2014, Appeals Coordinator Tallerico screened out Plaintiff's appeal. Plaintiff claims that this denied him access to the courts.

On October 19, 2014, Plaintiff contacted Internal Affairs and informed them of his civil rights violations. Agent Cooper sent the complaint to Warden Biter, who sent it to Appeals Coordinator Tarnoff. Appeals Coordinator Tarnoff did not investigate any of Plaintiff's complaints.

On October 21, 2014, Plaintiff asked Lieutenant Ostrander to help him get his conspiracy appeal processed. She reportedly talked to Appeals Coordinator Tallerico.

On October 30, 2014, Plaintiff's appeal was finally accepted.

On November 11, 2014, Assistant Warden Pfeiffer denied Plaintiff's appeal at the second level. Plaintiff claims that Assistant Warden Pfeiffer violated his First and Fourteenth Amendment rights by upholding the baseless guilty finding.

On December 4, 2014, Plaintiff filed a staff complaint against Defendants Henderson, Harden, and Diaz. Appeals Coordinator Tallerico screened out the 602 for time constraint violations and all supporting documents disappeared.

On December 12, 2014, Plaintiff asked Officer Garcia to defer his SHU as he did for Inmate Siders. Plaintiff was ignored.

On December 30, 2014, Plaintiff contacted Internal Affairs and provided them an eight-page record of his civil rights violations. Agent Cooper refused to investigate the allegations, which were sent to Warden Biter and then to Appeals Coordinator Tarnoff for investigation.

1    On March 3, 2015, Appeals Coordinator Tarnoff ignored Plaintiff's complaints and denied

2    his appeal at the second level of review.

3    On the same day, Plaintiff was taken to committee and again denied the SHU deferment.

4    Instead, Plaintiff was punished with a 24-month SHU term to be followed by an indeterminate

5    placement into the Step Down Program. Plaintiff also was put up for transfer to CCI or Corcoran

6    SHU.

7    On March 21, 2015, Plaintiff was emergency transferred to Pelican Bay. This occurred the

8    day before Plaintiff was to receive a scheduled visit from out-of-state. Plaintiff claims this was

9    retaliation for contacting Internal Affairs.

10   On May 4, 2015, Plaintiff was placed in the SHU and much of his property was thrown

11   out because of property restrictions.

12   In early June 2015, Plaintiff received the third level denial for his conspiracy appeal.

13   On July 16, 2015, Plaintiff filed a writ of habeas corpus, Case No. HCPB-15-5095, with

14   the California Superior Court of Del Norte County. Plaintiff challenged the guilty finding for

15   conspiracy, as well as the alleged civil rights violations. At the same time, A. Wong of Internal

16   Affairs refused to investigate Eileen Peterson's citizen's complaint and instead entrusts the

17   investigation to Warden Biter, who did not investigate Ms. Peterson's concerns about her son's

18   emergency transfer.

19   In late December 2015, Plaintiff was transferred to San Diego County Jail for a Miller v.

20   Alabama hearing.

21   On March 21, 2015, Plaintiff returned to Pelican Bay SHU.

22   On April 6, 2015, Plaintiff went to committee for his annual review. Initially, Plaintiff's

23   counselor recommended that Plaintiff, having completed his 24-month SHU term, be placed into

24   Step 1 of the Step Down Program. Plaintiff disagreed and informed the committee about the lack

25   of evidence for his SHU placement and the pending writ. Plaintiff subsequently was released to

26   the mainline.

27   On April 28, 2015, Plaintiff was transferred back to KVSP, where Pfeiffer was then

28   Warden. Plaintiff told staff that he wanted to go to SNY. It took Plaintiff nineteen months to

8

1   complete the debrief process.

2       On June 17, 2016, Plaintiff's writ was granted and his guilty finding for conspiracy was

3   vacated, along with all other resulting penalties.

4       **III.    Motion to Dismiss**

5       A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, and

6   dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts

7   alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42

8   (9th Cir. 2011) (quotation marks and citations omitted).  To survive a motion to dismiss, a

9   complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible

10  on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*,

11  550 U.S. 544, 555 (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242;

12  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  "A claim has facial plausibility

13  when the plaintiff pleads factual content that allows the court to draw the reasonable inference

14  that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. While the

15  plausibility requirement is not akin to a probability requirement, it demands more than "a sheer

16  possibility that a defendant has acted unlawfully." *Id.* This plausibility inquiry is "a context-

17  specific task that requires the reviewing court to draw on its judicial experience and common

18  sense." *Id.* at 679.

19      In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

20  the court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551

21  U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff.  *Jenkins*

22  *v. McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. Cty. of Riverside*, 183 F.3d 962, 965 (9th Cir.

23  1999).  However, the court need not credit "labels and conclusions" or "a formulaic recitation of

24  the elements of a cause of action."  *See Twombly*, 550 U.S. at 555.

25      In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits

26  thereto, and matters which may be judicially noticed. *See Mir v. Little Co. of Mary Hosp.*, 844

27  F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d

28  1035, 1042 (C.D. Cal. 1998).

1        **A.**    **Claim Preclusion or Res Judicata**

2        Claim preclusion bars litigation of claims that were or could have been raised in a prior

3    action, *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007) (quotation marks omitted), and

4    it "requires three things: (1) identity of claims; (2) a final judgment on the merits; and (3) the

5    same parties, or privity between parties," *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir.

6    2012) (citing *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2010)).

7        The doctrine of *res judicata*, or claim preclusion, "bars repetitious suits involving the

8    same cause of action once a court of competent jurisdiction has entered a final judgment on the

9    merits." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315 (2011) (citation and

10   internal quotation marks omitted). Under the Federal Full Faith and Credit Statute, 28 U.S.C. §

11   1738, a federal court must give a state court judgment the same preclusive effect as the state court

12   judgment would receive by another court of that state. *See* 28 U.S.C. § 1738; *Maldonado v.*

13   *Harris*, 370 F.3d 945, 951 (9th Cir. 2004) ("28 U.S.C. § 1738 generally requires federal courts to

14   give state court judgments the same res judicata effect that they would be given by another court

15   of that state."). The Ninth Circuit has made it clear that a section 1983 claim brought in federal

16   court is subject to principles of issue and claim preclusion by a prior state court judgment. *See*

17   *Gonzales v. Cal. Dep't. of Corr.*, 739 F.3d 1226, 1231 (9th Cir. 2014) (holding that "reasoned

18   denials of California habeas petitions" have claim-preclusive effect on subsequent civil

19   litigation); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1347 (9th Cir. 1981) ("we hold that

20   because of the nature of a state habeas proceeding, a decision actually rendered should preclude

21   an identical issue from being relitigated in a subsequent § 1983 action if the state habeas court

22   afforded a full and fair opportunity for the issue to be heard and determined under federal

23   standards."). California's claim preclusion law therefore governs whether Plaintiff's § 1983 claim

24   may be brought in federal court. *Furnace v. Giurbino*, 838 F.3d 1019, 1023 (9th Cir. 2016); *see*

25   *also Anderson v. Mendoza*, No. 2:17-cv-1244-KJM-DB P, 2018 WL 6528429, at *3 (E.D. Cal.

26   Dec. 12, 2018), appeal dismissed, No. 19-15428, 2019 WL 4271992 (9th Cir. July 9, 2019)

27   ("California claim preclusion law governs whether, in light of his earlier state habeas petition,

28   plaintiff's § 1983 claims may be brought in federal court.").

In *Furnace*, the Ninth Circuit held that a petition for writ of habeas corpus filed in California state court can have a claim preclusive effect on a subsequent section 1983 action if the second suit involves: (1) the same cause of action (2) between the same parties or parties in privity with them (3) after a final judgment on the merits in the first suit. 838 F.3d at 1023.

California courts employ the primary rights theory to determine what constitutes the same cause of action for claim preclusion purposes, and under this theory, a cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty. *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (citing *City of Martinez v. Texaco Trading & Transp., Inc.*, 353 F.3d 758, 762 (9th Cir. 2003)). If two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery. *Id.* (quoting *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174 (1983)).

"California's *claim preclusion* case law...prevents relitigation 'between the *same parties* or *parties* in privity with them.'" *Furnace*, 838 F.3d at 1028 (quoting *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 824 (2015)). Privity is a legal conclusion which designates a person "so identified in interest with a party to former litigation that he represents precisely the same right" being adjudicated. *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) (quoting *Southwest Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 94 (5th Cir. 1977)); *Nordhorn v. Ladish Co.*, 9 F.3d 1402, 1405 (9th Cir. 1993) ("[W]hen two parties are so closely aligned in interest that one is the virtual representative of the other, a claim by or against one will serve to bar the same claim by or against the other.") (citation omitted).

"A judgment is on the merits for purposes of res judicata if the substance of the claim is tried and determined." *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 77 (2000) (citation and internal quotation marks omitted).

**B.      Prior Action:  *In re Kristopher Kirchner, J-31375*, Case No. HCPB15-5095**

Defendants request that the Court take judicial notice of the following records of the

11

Superior Court of the State of California, Del Norte County:

      1.  *Kirchner v. Beard, et al.*, Petition for Writ of Habeas Corpus, No. HCPB-15-5095, Del Norte County Superior Court (without exhibits); and

      2.  *In re Kristopher Kirchner, J-31375*, Decision Granting Petition for Writ of Habeas Corpus, No. HCPB-15-5095, Del Norte County Superior Court.

(ECF No. 43, Exs. A and B.)  The Court may take judicial notice of state court records. *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007); *Kasey v. Molybdenum Corp. of America*, 336 F.2d 560, 563 (9th Cir. 1964).  Accordingly, Defendants' request is GRANTED.  The Court takes judicial notice of Plaintiff's Petition for Writ of Habeas Corpus, No. HCPB15-5095, filed in the Del Norte County Superior Court, and the Decision Granting Petition for Writ of Habeas Corpus, *In re:  Kristopher Kirchner*, *J-31375*, Case No. HCPB15-5095, dated June 17, 2016. (ECF No. 43, Exs. A and B.)

      On July 16, 2015, Plaintiff filed a petition for writ of habeas corpus in the Del Norte County Superior Court challenging the disciplinary proceedings based on RVR FA-14-04-024, issued on April 22, 2014, which charged him with a conspiracy to batter an inmate with a weapon-STG Nexus.  (ECF No. 43, RJN Ex. A 7). Among others, Plaintiff named Defendants Henderson, Harden, Diaz, and Perez as parties to the habeas action.  (*Id.*, RJN Ex. A 10-11.) Plaintiff alleged in the petition that the disciplinary process relevant to RVR FA-14-04-024 was undermined by due process violations, including that Defendants Harden and Henderson allegedly failed to respond to his interview questions, Defendant Perez failed to collect evidence, Plaintiff was denied his right to present evidence in defense, and the guilty finding by Defendant Diaz was not supported by any evidence.  (*Id.*, RJN Ex. A 8-10, 23-24.)  Plaintiff claimed that his due process rights were violated, along with his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to be treated equally.  (*Id.*, RJN Ex. A 9-10.)  As part of his requested relief, Plaintiff sought an order vacating the RVR guilty finding and restoration of his good time credits.  (*Id.*, RJN Ex. A 27.)

      On June 17, 2016, the Del Norte Superior Court considered Plaintiff's challenge to the guilty finding at his disciplinary hearing.  The Superior Court applied the "some evidence"

1  standard to review the disciplinary hearing officer's decision, relying on *In re Powell*, 45 Cal. 3d

2  894, 904 (1988) and *In re Ramirez*, 94 Cal. App.4th 549, 563 (2001).  Applying this standard, the

3  Superior Court determined that the hearing officer's finding that Plaintiff conspired to assault

4  other inmates was not supported by "some evidence" in the record.  Accordingly, the court

5  granted the petition of writ of habeas corpus and vacated the hearing officer's finding of guilty

6  (and all penalties resulting from the finding of guilty).  (ECF No. 43, Ex. B 1-4.)

7       **C.      Parties' Positions**

8       Defendants contend that this action is barred by the doctrine of *res judicata* because

9  Plaintiff has already litigated the same issue raised in this lawsuit, against the same defendants, in

10  the state habeas action in Del Norte County Superior Court, and received a final judgment on the

11  merits.  (ECF No.42-1.)

12      In opposition, Plaintiff argues that he is entitled to sue the named defendants for

13  "wrongful segregation based on a fraudulent write up" in their individual capacities because they

14  did not appeal the state habeas decision.  (ECF No. 47, p. 1, citing RJN A 28 [ECF No. 43].)

15  Plaintiff also mentions that he sought to bring a claim for retaliation in this case.  (ECF No. 47 at

16  p. 2.)  Plaintiff further argues that *res judicata* does not apply to his § 1983 civil suit for damages

17  because he first had to receive favorable termination of the guilty finding in state court, citing

18  primarily *Muhammad v. Close*, 540 U.S. 749 (2004), *Preiser v. Rodriguez*, 411 U.S. 475 (1973),

19  and *Edwards v. Balisok*, 520 U.S. 641 (1997).  (*Id.* at p. 2.)

20      **D.      Discussion**

21      The Court finds that Plaintiff's claims are barred by the doctrine of *res judicata*.  First, the

22  instant action concerns the same due process cause of action as that raised by *In re Kristopher*

23  *Kirchner, J-31375*.  The allegations in this action involve the same primary right asserted by

24  Plaintiff, the same primary duties devolving upon the same defendants, and allege the same harms

25  done by defendants as those raised in *In re Kristopher Kirchner, J-31375*.  In both cases, Plaintiff

26  alleges that Defendants Henderson, Harden, Diaz, and Perez violated his due process rights,

27  prevented Plaintiff from providing evidence or witnesses or otherwise defending himself at the

28  disciplinary hearing as they were required to do, and that the guilty finding was not supported by

13

any evidence.  (ECF No. 19; ECF No. 43, RJN Ex. A 23-25.)  Although Plaintiff now seeks a different form of relief, *i.e.,* damages, seeking a different form of relief or pleading a different theory of recovery are not sufficient to overcome the finding that the two actions involve the same injury to Plaintiff and the same alleged wrong by Defendants.  *Brodheim*, 584 F.3d at 1268 (quoting *Eichman*, 147 Cal. App. 3d at 1174).

Second, the two actions are between the same parties or parties in privity with them.  This action proceeds only against Defendants Henderson, Harden, Diaz, and Perez.  (ECF Nos. 20, 22.)  *In re Kristopher Kirchner* named Defendants Henderson, Harden, Diaz, and Perez, as well as J. Beard, M. Biter, C. Pfeiffer, and E. Ducat.  (ECF No. 43, A 10-11.)

Third, Plaintiff received a final judgment on the merits in *In re Kristopher Kirchner, J-31375.*  That action determined the hearing officer's finding that Plaintiff conspired to assault other inmates was not supported by some evidence in the record and granted the petition for writ of habeas corpus.  The hearing officer's finding of guilty was ordered vacated as well as all penalties resulting from the guilty finding.  (ECF No. 43, RJN Ex. B 4.)  The Superior Court considered arguments raised in Plaintiff's petition, along with Respondents' Return and declarations concerning Plaintiff's allegations (*id.*, RJN Ex. B), and the decision was rendered after Plaintiff had "full and fair opportunity for the issue to be determined under federal standards."  *Silverton*, 644 F.2d at 1347.  The Superior Court considered the same "some evidence" standard that the Court would apply to the decision of the hearing officer in the instant action to determine if Plaintiff's due process rights were violated.  (*See* ECF No. 43, RJN Ex. B; ECF No. 20 at pp. 14-15.)

Fourth, insofar as Plaintiff argues that his claim is not barred and he is entitled to sue the named defendants in their individual capacities for "wrongful segregation based on a fraudulent write up" or retaliation, this argument is not persuasive.  The instant action proceeds only on Plaintiff's due process claim arising out of his disciplinary proceedings, not "wrongful segregation" or retaliation.  (*See* ECF Nos. 20, 22.)

Finally, Plaintiff appears to argue that his section 1983 action for damages is authorized by *Muhammad, Edwards*, and *Preiser* as he was required to obtain favorable termination before

14

filing this action.  These cases do not support denying the motion.  *Muhammad* held that the favorable termination rule did not apply to a prisoner's challenge to prison disciplinary proceedings which did not seek a judgment at odds with the prisoner's conviction or with the state's calculation of time to be served (*e.g.*, bearing on the award or revocation of good time credits). 540 U.S. at 754-55.  *Muhammad* is not applicable as Plaintiff's state habeas action sought restoration of his good time credits.

Additionally, neither *Edwards* nor *Preiser* addressed the preclusive effect of a California state judgment and California's primary rights theory.  "The primary rights doctrine prevents … inconsistent judgments by requiring a party to bring all of his claims—as many causes of action, or theories of recovery, or remedies as he has—in a single suit." *Furnace*, 838 F.3d at 1027.  The favorable termination rule does not preclude dismissal of Plaintiff's section 1983 suit on the grounds of claim preclusion (*res judicata*).  *Cf. Amenta v. Paramo*, No. 3;16-cv-02931-BTM-KSC, 2017 WL 1336922, at *3 n.2 (S.D. Cal. Apr. 5, 2017) (concluding favorable termination rule did not preclude § 1983 action where plaintiff's credits were restored in response to state habeas petition, but noting § 1983 action may be subject to dismissal on grounds of claim preclusion); *see also Gonzales*, 739 F.3d at 1231 (concluding reasoned denials of California habeas petitions have claim-preclusive effect on subsequent civil litigation).

Plaintiff's attempted reliance on other out-of-district cases is not persuasive (ECF No. 47 at pp. 1-2.), as those cases are inapplicable and not binding authority in this circuit.

**IV.    Conclusion and Recommendations**

Based on the foregoing, it is HEREBY RECOMMENDED as follows:

1.  Defendants' motion to dismiss (ECF No. 42) be granted; and

2.  This action be dismissed as barred by the doctrine of *res judicata* (claim preclusion).

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the

specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 23, 2024**            /s/ *Barbara A. McAuliffe*
                                          UNITED STATES MAGISTRATE JUDGE

16